# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

FRANK V. HUSCHLE *et al.*,
    *Plaintiffs*,

v.

ALLSTATE INSURANCE COMPANY *et al.*,
    *Defendants*.

No. 3:18-cv-00248 (JAM)

## ORDER GRANTING MOTIONS TO DISMISS

Plaintiffs Frank and Cynthia Huschle have filed this lawsuit against their three home insurance companies: Allstate Insurance Company, 21st Century Premier Insurance Company f/k/a AIG Insurance Company, and Teachers Insurance Company. Plaintiffs allege that their insurers have failed to pay for damage to their home's basement walls caused by cracking and deteriorating concrete. Plaintiffs allege that this constitutes a breach of the insurers' policies, and also that 21st Century and Teachers have violated the Connecticut Unfair Insurance Practices Act (CUIPA) and the Connecticut Unfair Trade Practices Act (CUTPA). Defendants Allstate and Teachers have moved to dismiss plaintiffs' claims against them. For the reasons stated below, I will grant their motions to dismiss.

### BACKGROUND

The following facts are taken from plaintiffs' amended complaint and defendants' insurance policies which are integral to the complaint. Plaintiffs purchased their home in Tolland, Connecticut in 1998, the year it was built. Doc. #33 at 2 (¶ 7). In January 2017, they noticed that the basement walls of their home had a series of horizontal and vertical cracks throughout. *Id.* at 3 (¶ 10). They immediately investigated the "pattern cracking" condition, its

1

cause, and the methods of repair by consulting with local professionals. *Ibid.* (¶ 11). They learned that the "pattern cracking" came from a chemical compound in certain walls constructed in the 1980s and 1990s with concrete from the J.J. Mottes Concrete Company. *Ibid.* (¶ 12). The Mottes concrete was made from an aggregate that included a chemical compound which started to rust and expand, breaking the concrete's internal bonds and reducing it to rubble. *Ibid.* (¶ 13). Plaintiffs allege that concrete made with "good and sufficient materials" should instead last for centuries rather than for decades. *Id.* at 13 (¶¶ 84–85).

Plaintiffs also allege that it is "only a question of time" until their basement walls will fall in from exterior soil pressure. *Id.* at 3 (¶ 14). Plaintiffs allege that, while the process of decay occurs over the course of years, "it may cause sudden events throughout the course of decay," such as "events where the walls bulge and shift in some increment or pieces of concrete become dislodged and fall to the floor." *Id.* at 3–4 (¶¶ 15–16).

Plaintiffs insured their home under an Allstate policy from 1998 to 2001. *Id.* at 3 (¶ 8). The Allstate policy covered "sudden and accidental direct physical loss" to insured buildings and structures. Doc. #32-1 at 16. The policy placed several limits on that coverage. The policy generally did not cover losses caused by "faulty, inadequate or defective . . . materials used in repair, construction, renovation or remodeling." *Id.* at 17–18. The policy only covered collapses as defined in the "Additional Protection" section. *Id.* at 16–17. That section covered "the entire collapse" of all or part of a covered building, provided the collapse is "a sudden and accidental direct physical loss." *Id.* at 25. The policy covered collapses caused by defective construction materials, but noted that a collapse "does not include settling, cracking, shrinking, bulging or expansion." *Ibid.* When plaintiffs learned about the cracks in their basement walls, they sent a

letter to Allstate about the cracks and claimed coverage. Doc. #33 at 4 (¶ 17). Allstate denied the claim. *Ibid.* (¶ 22).

Plaintiffs insured their home with 21st Century from 2001 to 2009. *Id.* at 5 (¶ 31). They notified 21st Century about the cracks in January 2017, and 21st Century denied their claim. *Id.* at 7 (¶¶ 41, 46). 21st Century has not moved to dismiss plaintiffs' claims against it.

Plaintiffs have insured their home with Teachers Insurance Company since 2009. *Id.* at 11 (¶ 72). One Teachers policy covered plaintiffs' home from 2009 to 2013, and another Teachers policy has covered plaintiffs' home from 2013 to the present. The 2009 policy did not say anything about collapse. Doc. #39-1 at 57–58. The 2009 policy did, however, state that Teachers would not pay for loss "caused by the settling, cracking, shrinking, bulging or expanding of a building structure." *Id.* at 58. The policy also excluded coverage for any loss "which results from . . . a defect, a weakness, an inadequacy, a fault or unsoundness in materials used in construction or repair" of the insured property. *Id.* at 62. The 2013 policy explicitly covers collapse, including collapses caused by decay or by the use of defective construction materials. *Id.* at 14–15. The policy provides that "collapse" means an "abrupt caving in, falling in, falling down, or giving way that prevents the building or the part of the building from being occupied for the purpose for which it was intended just before" the collapse. *Id.* at 15. The policy further provides that collapse does not include a building "in danger of caving in, falling in, falling down, or giving way." *Ibid.*

Plaintiffs notified Teachers about the basement wall cracks on January 16, 2017, and Teachers denied their claim on February 1, 2017. Doc. #33 at 13–14 (¶¶ 92–94). Plaintiffs also allege that the Teachers has knowingly engaged in a practice of falsely denying coverage and unfairly failing to settle claims. *Id.* at 16–17 (¶¶ 109–116).

3

Plaintiffs have sued Allstate (Counts I and II) and 21st Century (Counts III and IV) for breach of contract and for declaratory judgments that their policies cover the cracking. *Id.* at 2–8 (¶¶ 7–54). Plaintiffs have also asserted a claim for a violation of CUIPA and CUTPA against 21st Century (Count V). *Id.* at 8–11 (¶¶ 55–70). Lastly, plaintiffs have sued Teachers for breach of contract and for violating CUIPA and CUTPA (Counts VI and VII). *Id.* at 11–18 (¶¶ 71–118). Allstate and Teachers have moved to dismiss all the counts against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. Doc. #37; Doc. #38.

## DISCUSSION

For purposes of a motion to dismiss for failure to state a claim, the Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Because the focus must be on what facts a complaint alleges, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). In short, my role in reviewing a motion to dismiss under Rule 12(b)(6) is to determine if the complaint—apart from any of its conclusory allegations—alleges enough facts to state a plausible claim for relief.

A court must interpret the terms of an insurance policy as it would a contract to determine if the text of the policy makes the parties' intent unambiguously clear. Only if the text of the policy is ambiguous does a court look to other evidence of the parties' intent and in light of the

4

rule that any ambiguity or exclusion in the policy must be construed in favor of the insured. *See, e.g.*, *Conn. Ins. Gaur. Ass'n v. Drown*, 314 Conn. 161, 187–88 (2014).

### *Claims against Allstate*

Plaintiffs claim that Allstate improperly denied their claim for basement cracking. Doc. #40 at 6–7. They argue that the Allstate policy's terms can reasonably be interpreted to apply to the cracking in their home. Doc. #40 at 7–15. I do not agree. Plaintiffs allege their basement walls "are in a state of collapse." Doc. #33 at 4 (¶ 20). The Allstate policy covers some collapses, and plaintiffs are right to point out that the policy lets the term "collapse" go undefined. Doc. #40 at 8. In *Beach v. Middlesex Mutual Assurance Co.*, 205 Conn. 246 (1987), the Connecticut Supreme Court held that absent further definition, the term "collapse" in an insurance policy could include any substantial impairment to a building's structural integrity. *Id.* at 251–53; *see also Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d Cir. 2009) (same).

The key distinction here is that the Allstate policy explicitly limits itself to only cover "sudden and accidental" collapses. The Connecticut Supreme Court has, in the insurance context, held that a "sudden and accidental" event is a temporally abrupt one. *See Buell Indus., Inc. v. Greater N.Y. Mut. Ins. Co.*, 259 Conn. 527, 540–42 (2002). Plaintiffs allege a process of oxidization in their foundation's concrete that began when the concrete aggregate was mixed in the 1990s, and a subsequent "process of decay" that "occurs over the course of years." Doc. #33 at 3 (¶¶ 13–14).[1] That is not a temporally abrupt event.

Plaintiffs also argue that a temporal abruptness requirement would contradict the Allstate policy's language covering collapses caused by gradual phenomena such as hidden decay or

---

[1] The court in *Maki v. Allstate Insurance Co.*, 320 F. Supp. 3d 380 (D. Conn. 2018), suggested that an abrupt event might be "the exposure of cracks demonstrating substantial impairment." *Id.* at 382. Here, while plaintiffs may have *discovered* the cracking in their wall abruptly, they allege that actual process of concrete breakdown is a gradual one.

5

insect damage. *See* Doc. #40 at 9–10 (citing *Maki v. Allstate Ins. Co.*, 320 F. Supp. 3d 380, 382–83 (D. Conn. 2018), and *Kelly v. Balboa Ins. Co.*, 897 F. Supp. 2d 1262, 1268 (M.D. Fla. 2012)). I do not agree. The policy makes clear that the *loss* must be sudden and accidental, not that loss's *cause*. *See* Doc. #32-1 at 25. Indeed, a slow-moving cause of collapse is entirely consistent with a collapse that is itself temporally abrupt. *See* Doc. #22 at 13–14 to *Alexander v. Gen. Ins. Co. of Am.*, 16cv59 (D. Conn. 2016) (using example of termites eating away at beam until beam fails as example of how abrupt collapse can occur at end of gradual process). "While such a collapse may happen in the future, [p]laintiffs have not alleged that such a sudden collapse has occurred yet." *Valls v. Allstate Ins. Co.*, 2017 WL 4286301, at *5 (D. Conn. 2017). Accordingly, I will dismiss the claims against Allstate.

### *Claims against Teachers*

I will also dismiss the claims against Teachers. Plaintiffs claim that Teachers improperly denied them coverage under both the 2009 policy and the 2013 policy. Doc. #33 at 14 (¶¶ 94–99). I don't agree.

To begin with, the 2009 policy does not explicitly address collapse. This means the 2009 policy covered plaintiffs' home on an "all-risk basis," that is to say it covered any loss to the home unless other language in the policy excluded that loss. *See Kowalyshyn v. Excelsior Ins. Co.*, 2018 WL 888724, at *5 (D. Conn. 2018). But the policy's exclusions are the problem for plaintiffs: the policy excludes losses "caused by . . . cracking" or losses "which result[] from" defective construction materials. Doc. #39-1 at 58, 62. Courts in this District have concluded that a crumbling foundation is not covered when an all-risk policy excludes coverage for cracking. *See, e.g.*, *Kim v. State Farm Fire & Cas. Co.*, 262 F. Supp. 3d 1, 8–9 (D. Conn. 2017), *aff'd*, 751 F. App'x 127 (2d Cir. 2018).

6

Plaintiffs attempt to distinguish the policy here, arguing that a loss "caused by" cracking differs from one that "consists of" cracks. Doc. #41 at 8. But even assuming for argument's sake that loss consisting of cracks is distinct from loss caused by cracks, plaintiffs still allege that those cracks result from the use of defective concrete. Doc. #33 at 12–13 (¶¶ 76–86). The policy thus excludes a loss *consisting* of the defectively cracking concrete from coverage. Any further loss would, of course, be *caused* by cracking, and consequently also excluded.

Plaintiffs' argument that the cracking exclusion only applies to "normal" readjustment of building materials in their home is also unpersuasive. *See* Doc. #41 at 8. Unlike the policies in the cases plaintiffs rely on, the 2009 policy contained entirely separate provisions dealing with "cracking" and with normal "wear and tear." *See* Doc. #39-1 at 58, 62; *Corteau v. Teachers Ins. Co.*, 338 F. Supp. 3d 88, 96 (D. Conn. 2018) (discussing and distinguishing the same cases). I therefore conclude that the 2009 policy does not cover the damage to plaintiffs' home.

Nor does the 2013 policy cover plaintiffs' claim. That policy first defines collapse to be an "abrupt" occurrence. Doc. #39-1 at 15. Plaintiffs argue that "abrupt" can mean "unexpected," and does not necessarily convey any element of temporal suddenness. Doc. #41 at 13–16. I do not agree. "Abrupt" in the policy modifies already unexpected events like a "caving in," and the policy's language about a property being rendered unusable for its intended purpose "just before" a collapse contemplates a temporally distinct and sudden change in a building's condition. *See Corteau*, 338 F. Supp. 3d at 99 ("How would one pinpoint the moment 'just before' such a slow-moving series of changes reached the point at which the Property became uninhabitable?").

Although plaintiffs argue that the policy's coverage for collapse caused by gradual decay is inconsistent with a suddenness requirement, Doc. #41 at 14–15, there is—as with the Allstate

7

policy—nothing inconsistent about a long process of decay leading to an abrupt collapse. Indeed, the 2013 Teachers policy underscores this understanding—its language clarifying that a collapse has not occurred when a building is only "in danger" of falling in makes clear that an ongoing condition making collapse an imminent possibility is insufficient to constitute an actual collapse. *See Corteau*, 338 F. Supp. 3d at 99. I am therefore satisfied that the 2013 policy does not cover the alleged damage to plaintiffs' home.

I lastly turn to plaintiffs' CUIPA and CUTPA claim against Teachers. The Connecticut Supreme Court has established that there is no recovery under CUIPA and CUTPA when an insurer properly denies a claim. *See Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 378 (2008). Because plaintiffs have not alleged plausible grounds to conclude that Teachers improperly denied their insurance claim, plaintiffs' CUIPA and CUTPA claims fail as well. *See Kowalyshyn*, 2018 WL 888724, at *7.

## Conclusion

For the reasons set forth above, defendant Allstate's motion to dismiss Counts I and II of the complaint (Doc. #37) is GRANTED. Defendant Teachers' motion to dismiss Counts VI and VII of the complaint (Doc. #38) is GRANTED. Because Allstate is terminated as a party to this case, the Court LIFTS its order (Doc. #52) that granted Allstate's motion to stay discovery. If counsel for plaintiffs and the remaining defendant 21st Century Premier Insurance Co. believe that it is necessary for the Court to enter an amended scheduling order to replace the existing scheduling order (Doc. #22), then they shall file a joint status report and proposed scheduling

order by April 9, 2019.

It is so ordered.

Dated at New Haven this 29th day of March 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge